## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**ALPHEAUS BANGURA, et al.,**                                      *

    **Plaintiffs,**                                      *

    **v.**                                      *          **CIVIL NO. JKB-23-2728**

**DEPARTMENT OF PUBLIC SAFETY**          *
**AND CORRECTIONAL SERVICES,**
**et al.,**                                      *

    **Defendants.**                                      *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM

Plaintiffs Alpheaus Bangura, Akinlolu Britto, Colenzo Grant, Maranda Guy, Macardy Lovelace, and Selissa Brown brought this case against several Defendants. They brought suit against the Maryland Department of Public Safety and Correctional Services ("DPSCS") and Commissioner J. Philip Morgan, in his official capacity. They also brought suit against the following Defendants, in both their official and individual capacities, and refer to these Defendants as the "40 West Defendants": Warden William Bohrer, Security Chief Joseph Lohman, Gary Durboraw, Joseph Garlitz, Willis Hendershot, Paul Anderson, Mark Clopper, Ray Foust, Jeffrey Golden, Geneva Moats, Eric Kretzer, Kevin Tew, Jennifer Latchford, Thomas Warrenfeltz, Brandon Guyer, Jason Basore, Wilmont Bair, Michael Lavrenchik, Terry Myers, Richard Weldon, Brent Little, Russell Souders, and Trevor Souders.

Pending before the Court are a Motion to Dismiss and Motion to Strike Class Claims filed by DPSCS, Morgan, Bohrer, Lohman, Durboraw and Garlitz (ECF No. 62) and a Motion to Dismiss and Motion to Strike Class Claims filed by the remaining Defendants (ECF No. 68). For the reasons set forth below, the Motions will be granted in part and denied in part.

## I.   *Factual Background*

Plaintiffs are all employees of DPSCS, working at the Maryland Correctional Training Center ("MCTC"), a prison facility. (ECF No. 48 ¶ 33.) The 40 West Defendants are "agents, servants and/or employees of DPSCS and work at MCTC." (*Id.* ¶ 13.) Plaintiffs allege that "a group of Caucasian COs organized to engage in illegal behavior and to take administrative control of MCTC, creating a race-based gang called '40 West', '40 West Boys', and/or '40 West Gang' decades prior to the present." (*Id.* ¶ 47.) In short, Plaintiffs allege that they have been subjected to various forms of retaliation and discrimination at the hands of 40 West and DPSCS.

With respect to 40 West, for instance, Plaintiffs allege that its members "engage in coordinated activities to provide mutual support and assistance to each other within the workplace, including, but not limited to, promotion of their members even when unjustified, assignment to the most desirable work posts, exemption from weekend work shifts, preferential and fraudulent assignment of overtime shifts, and avoidance of disciplinary action." (*Id.* ¶ 49.) Plaintiffs allege that the members of 40 West conspired to "injure, oppress, threaten, and/or intimidate Plaintiffs and other similarly situated individuals," such that they "will not be promoted, receive overtime opportunities, and/or receive arms cards," and that this conspiracy occurred "because of [Plaintiffs' and other similarly situated individuals'] protected statuses, including race and national origin," and "because they engaged in a protected activity and/or opposed conduct they reasonably believed to be unlawful related to the treatment they were subjected to on the basis of their protected status, including race and national origin." (*Id.* ¶¶ 56–58.)

Plaintiffs also allege, *inter alia*, that they experienced "unequal and harsher discipline compared to Caucasian officers" (*id.* ¶¶ 72–83); that they were discriminated against in terms of pay and promotions (*id.* ¶¶ 84–102); that they were discriminated against because they were not permitted to receive arms training that is beneficial to their career advancement (*id.* ¶¶ 103–109);

2

that they were denied overtime opportunities in favor of white officers (*id.* ¶¶ 110–20); that they were retaliated against for engaging in protected activity (*id.* ¶¶ 124–134); and that they were subjected to harassment and a hostile work environment (*id.* ¶¶ 135–145).  Each Plaintiff also provides certain allegations regarding the harm they allege they suffered individually.  (*Id.* ¶¶ 152–202.)

On this basis, Plaintiffs bring eight counts.[1]  Count I is brought against Morgan and the 40 West Defendants and is titled "Discrimination and Retaliation in Violation of the 1866 Civil Rights Act, 42 U.S.C. § 1983"; Count II is brought against DPSCS and Morgan and is titled "Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964"; Count III is brought against DPSCS and Morgan and is titled "Discrimination and Retaliation in Violation of MFEPA, Md. Code Ann., State Gov't § 20-601 et seq."; Count IV is brought against DPSCS and Morgan and is titled "Discrimination and Retaliation in Violation of Article 24 of the Maryland Declaration of Rights"; Count V is brought against the 40 West Defendants and is titled "Discrimination and Retaliation in Violation of Article 24 of the Maryland Declaration of Rights"; Count VII is brought against the 40 West Defendants and is titled "Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. § 1985(3)"; Count VIII is brought against the 40 West Defendants and is titled "Violation of the Racketeering Influenced Corrupt Organizations ('RICO') Act, 18 U.S.C. § 1962(c)"; and Count IX is brought against the 40 West Defendants and is titled "Violation of the Racketeering Influenced Corrupt Organizations ('RICO') Act, 18 U.S.C. § 1962(d)."

---

[1] Plaintiffs bring Counts I–V and VII–IX.  They do not bring a Count VI.  The Court will refer to the counts as they are described in the Complaint.

II.     *Legal Standard[2]*

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

III.    *Analysis*

Plaintiffs' Amended Complaint largely does not comply with the federal pleading standards. Plaintiffs make sweeping allegations, usually without providing any factual support for those allegations. This manner of pleading greatly distracts from any potentially meritorious claims that Plaintiffs might have. For the reasons below, the Court will dismiss most of the claims in the Amended Complaint, as specified below.

---

[2] The Court will not consider the affidavit that Defendants attached to their Motion to Dismiss in resolving the Motions. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) ("[A] court is not to consider matters outside the pleadings . . . when ruling on a motion to dismiss.").

4

### A.    Claims Against 40 West Defendants

As an initial matter, the Court will dismiss the claims against the majority of the individual Defendants. Plaintiffs—without any elaboration—simply assert that the individual Defendants (other than Commissioner Morgan) are in a gang called "40 West" and make up the "40 West Defendants," (ECF No. 48 at 6), and Plaintiffs go on to make sweeping allegations against these "40 West Defendants." (*See, e.g.*, *id.* ¶ 50 ("[T]he 40 West Defendants have been known to smuggle contraband (i.e., tobacco) into MCTC for both personal use and sale to inmates."); *id.* ¶ 56 ("[T]he 40 West Defendants have conspired amongst themselves and others and/or committed overt acts to injure, oppress, threaten, and/or intimidate Plaintiffs and other similarly situated individuals so that they will not be promoted, receive overtime opportunities, and/or receive arms cards.").) Plaintiffs do not attempt to plausibly allege that these Defendants are part of the "40 West" gang, asserting essentially only that "[t]he 40 West Defendants are known and unknown members of '40 West' who engage in coordinated activities," with no factual allegations to support that contention. (*Id.* ¶ 49.)

Further, the following Defendants are never even mentioned in the body of the Amended Complaint: Hendershot, Anderson, Clopper, Foust, Golden, Moats, Tew, Latchford, Guyer, Basore, Bair, Lavrenchik, Weldon, R. Souders, and T. Souders. The claims against these Defendants will be dismissed, given that there is not a single factual allegation lodged against them, and that Plaintiffs do not even plausibly allege that they are part of the "40 West" gang. *See Johnson v. Dore*, Civ. No. 12-3394-RWT, 2013 WL 5335626, at *4 (D. Md. Sept. 20, 2013) ("[Plaintiff's] Complaint does not include any allegations concerning [Defendants] to support a plausible claim against them. Indeed, as noted above, Johnson's allegations repeatedly refer generally to 'Defendants,' without identifying specific Defendants or conduct."); *Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 664 (D. Md. 2021) ("Here, none of the individual

5

board members are mentioned in any factual allegations . . . . There are a few allegations alleging that, *as a group*, they discriminated against females and voted against initiatives to protect females from sexual harassment based on discriminatory animus, but such allegations that refer generally to the group, without identifying specific individuals or conduct, are insufficient to state a claim against any individual board member." (emphasis in original)).  In short, Plaintiffs cannot simply allege that these Defendants are part of a gang, and then make sweeping allegations against the gang, without any factual support and without alleging any personal conduct on the part of these Defendants.

Thus, the remaining Defendants are: Bohrer, Lohman, Durboraw, Garlitz, Kretzer, Warrenfeltz, Myers, and Little (the "Remaining 40 West Defendants"), and DPSCS and Morgan. The Court notes at the outset that the factual allegations against most of the Remaining 40 West Defendants are extremely thin, and likely warrant summary dismissal as well.  However, the Court discusses the claims against these individuals below as warranted.

### B.    Count I – 42 U.S.C. § 1983

It is unclear what claim Plaintiffs seek to bring in Count I, and against whom.  Count I is titled "Discrimination and Retaliation in Violation of the 1866 Civil Rights Act, 42 U.S.C. § 1983," and, in the title, purports to be raised against Commissioner Morgan and the 40 West Defendants. (*See* ECF No. 48 at 53.)  However, Plaintiffs cite to the First Amendment, the Fourteenth Amendment, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  (*Id.* at ¶¶ 216–18.)  Plaintiffs also state that they seek to vindicate their "rights under 42 U.S.C. §§ 1981, 1983, 1985."  (*Id.* ¶ 230.)  Further confusing matters, while Count I in its caption states that it is brought against "Defendant Morgan and 40 West Defendants," no paragraph within Count I refers to Defendant Morgan, and Plaintiffs state that, with respect to this count, they "demand judgment, jointly and severally, against the 40 West Defendants," with no reference to Morgan (or DPSCS).  (*Id.* at 57.)

The Court can scarcely discern what claim Plaintiffs sought to bring in Count I and against which Defendants. Indeed, Plaintiffs themselves appear confused. Puzzlingly, Plaintiffs state in their briefing that "[i]n Count I, Plaintiffs allege violations of 42 U.S.C. § 1981 against all Defendants" and that "Count II asserts violations of 42 U.S.C. § 1983 against all Defendants, alleging violations of the Fourteenth Amendment, specifically for equal protection and due process violations arising from discriminatory employment practices." (ECF No. 71 at 9.) This is false. As already noted, Count I purports to be a § 1983 claim and Count II a Title VII claim, and neither was brought against all Defendants. (*See* ECF No. 48 (Count I titled "Discrimination and Retaliation in Violation of the 1866 Civil Rights Act, 42 U.S.C. § 1983" brought against Morgan and the 40 West Defendants and Count II titled "Discrimination and Retaliation in Violation of Title VII of the Civil Rights Act of 1964" brought against Morgan and DPSCS).)

Thus, as to Count I, Plaintiffs' claim violates Rule 8(a)'s requirement that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." On this basis alone, Count I must be dismissed in its entirety.

To the extent Plaintiffs sought to bring a § 1983 claim, as it is titled, Plaintiffs are reminded that "§ 1983 claims are *never* cognizable against states, state agencies, or state agents acting in their official capacities, regardless whether the defendant state has waived Eleventh Amendment immunity." *Dyer v. Md. State Bd. of Educ.,* 187 F. Supp. 3d 599, 611 n.16 (D. Md. 2016), *aff'd*, 685 F. App'x 261 (4th Cir. 2017) (emphasis in original). Furthermore, Plaintiffs are reminded that vicarious liability is inapplicable to a § 1983 claim, and that there must be a showing of personal fault based upon a defendant's personal conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (vicarious liability inapplicable in § 1983 suits); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (personal conduct required in a § 1983 suit).

7

**C.    Counts II and III – Title VII and the Maryland Fair Employment Practices Act**

Count II is a Title VII discrimination and retaliation claim, and Count III is a Maryland Fair Employment Practices Act ("MFEPA") claim. (ECF No. 48 at 58, 60.)  Both are brought against only DPSCS and Morgan. (*Id.*)  Defendants argue that Counts II and III should be dismissed as to Commissioner Morgan.[3]  The Court agrees, as maintaining the claims against Commissioner Morgan in his official capacity would be redundant. *See  Roberts v. Coffey*, Civ. No. DKC 10-3359, 2012 WL 2000353, at *3 (D. Md. June 4, 2012) ("[M]aintaining a Title VII suit against all three Defendants in their official capacities would be redundant because an official-capacity suit is tantamount to a suit against the state.").  Thus, these two claims survive only as to DSPCS.

Defendants argue that the discriminatory failure to provide arms cards and failure to promote allegations must be dismissed.  The Court agrees.

Plaintiffs' allegations regarding arms cards are limited to vague, conclusory allegations devoid of any factual support.  Plaintiffs allege that "[t]he 40 West Defendants possess a degree of control over the arms card tests and lists and exercise and/or conspire to exercise that control so as to deny promotions to POCs and immigrants and to grant arms cards to their own members," and that "[t]he 40 West Defendants prevented and/or conspired to prevent POCs, and immigrants from obtaining arms cards at the same rate as Caucasian officers, while prioritizing '40 West' members and Caucasian officers for arms card training which resulted in unequal treatment based on race and national origin." (ECF No. 48 ¶¶ 106, 107.)  Further, none of the individual Plaintiffs

---

[3] Defendants state that these claims should be dismissed against the "individual defendants." (ECF No. 77 at 14–16.) However, these claims were brought only against Morgan and DPSCS.

8

allege that they applied for or were denied an arms card; in fact, none of the individual Plaintiffs make any allegations at all about arms cards—conclusory or not. (*See id.* ¶¶ 171–202.)

Plaintiffs' allegations regarding failure to promote are likewise vague and conclusory. For instance, Plaintiffs allege that "DPSCS fails to administer promotional tests on a regular basis, which has a disparate impact on other POCs, and immigrants, which is evidenced by the paucity of POCs holding ranks above CO I or CO II." (*Id.* ¶ 93.) Plaintiffs do not explain how this infrequent administration of promotional tests is discriminatory. Moreover, not a single Plaintiff alleges that they sought a promotion. (*See id.* ¶¶ 171–202.)

The parties make hay regarding whether these claims are made under the *McDonnell Douglas* framework or the pattern and practice framework. Regardless of the framework, Plaintiff must still comply with the federal pleading standards. *See EEOC v. PBM Graphics Inc.*, 877 F. Supp. 2d 334, 343 (M.D.N.C. 2012) ("The Supreme Court has explained that . . . evidentiary standards [such as *McDonnell Douglas* and the *Teamsters* pattern-or-practice standard] are distinct from pleading requirements under Federal Rules of Civil Procedure 8(a) and 12(b)."). And Plaintiffs' vague and unsupported allegations do not raise a plausible inference that they were subjected to discrimination related to arms cards or promotions.

Accordingly, Count II and III will be dismissed without prejudice insofar as they seek to bring discrimination claims premised on arms cards and promotions.

### D.    Counts IV and V – Article 24 of the Maryland Declaration of Rights

Plaintiffs brought a claim of discrimination and retaliation in violation of Article 24 of the Maryland Declaration of Rights against DPSCS and Morgan (Count IV), and the same claim against the 40 West Defendants (Count V).

Defendants do not appear to seek the dismissal of Count IV against DPSCS and Morgan. However, as noted above, a claim against Morgan in his official capacity is a claim against the

9

state, so naming Morgan and DPSCS is redundant, and the claim as to Morgan will be dismissed. Thus, Count IV survives only as to DPSCS.

Moving on to Count V, Defendants argue that the individual Defendants are entitled to qualified immunity.[4] However, "[a] state public official alleged to have violated Article 24, or any article of the Maryland Declaration of Rights, is not entitled to qualified immunity." *Okwa v. Harper*, 757 A.2d 118, 140 (Md. 2000); *see also Middleton v. Koushall*, Civ. No. ELH-20-3536, 2024 WL 1967816, at *38 n.24 (D. Md. May 3, 2024) ("[T]he federal doctrine of qualified immunity is not a defense to claims brought under the Maryland Declaration of Rights."); *B.N.S. by Stuart v. Brito*, Civ. No. ELH-17-2670, 2018 WL 5830565, at *9 (D. Md. Nov. 6, 2018) ("Qualified immunity . . . is not a defense to a claim brought under Article 24 of the Maryland Declaration of Rights . . . Instead, a court may consider potentially applicable state law immunities, if raised as defenses." (citations omitted)).

Defendants next raise arguments pursuant to the Maryland Tort Claims Act ("MTCA") with respect to the liability individual Defendants. Judge Hollander recently described immunity under the MTCA:

> [T]he MTCA provides that State personnel are immune from suit for any tortious act or omission that is within the scope of the public duties of the official and is made without malice or gross negligence, and for which the State has waived immunity. In that circumstance, the MTCA substitutes the liability of the State for the liability of the state employee. And in a precisely complementary provision, the MTCA waives the state's immunity for tort actions brought in state court except where a tortious act or omission by state personnel is outside the scope of their public duties or made with malice or gross negligence.
>
> At issue in MTCA cases like this one, in other words, is not whether a person injured by tortious state action will have any remedy, but whether that remedy will

---

[4] Defendants argue that the individual Defendants in this case are entitled to qualified immunity. It is not clear from Defendants' Opposition on which claims Defendants seek qualified immunity, although Defendants explain in their Reply that they "are entitled to qualified immunity from the alleged State and federal constitutional violations." (ECF No. 77 at 14.) Plaintiffs have not asserted any federal constitutional violations (at least none that the Court can discern); the Court will therefore discuss the issue of qualified immunity below in the context of the Maryland constitutional claims.

lie against a state official in his or her personal capacity or against the state itself. If State personnel defendants are entitled to statutory immunity, any claims against them are instead asserted against the State itself. If, however, the state personnel are not entitled to immunity under the statute, then the State is immune from liability for their conduct.

State personnel are not immune from suit and liability in tort when the plaintiff's complaint sufficiently alleges malice or gross negligence. Thus, compliance with the MTCA's notice requirement is not necessary in a suit against individual State personnel in which it is sufficiently alleged that the defendants acted with malice or gross negligence. Indeed, the MTCA's requirements have no effect on a plaintiff's claims against individual state employees.

*Francis v. Maryland*, Civ. No. ELH-21-1365, 2023 WL 2456553, at *28 (D. Md. Mar. 10, 2023)

(citations, internal quotation marks, and alterations omitted).

Defendants argue that Plaintiffs have not sufficiently alleged that the individual Defendants acted with malice or gross negligence. The Court largely agrees, and will dismiss the claims against all of the Remaining 40 West Defendants, save for Defendant Durboraw. However, as noted below, the Court will require Plaintiffs to show cause why the claim should proceed against him.

Plaintiffs' allegations as to Bohrer are limited to allegations along the lines of: "Upon information and belief . . . Defendant Bohrer, MCTC's Warden, [is] attempting to find excuses to terminate Plaintiffs' employment and/or force them into an involuntary quit due to their complaints of discrimination against the 40 West Defendants and others." (ECF No. 48 ¶ 75.) With respect to Garlitz, the entirety of Plaintiffs' allegations are that:

On or about December 27, 2022, Plaintiff Grant was called by Defendant Garlitz into his office for a meeting. Captain Michael A. Cunningham . . . was present during this meeting. During this meeting, Plaintiff Grant was told that he would not be able to work overtime for the next 6 months because Defendant Garlitz gave him an unsatisfactory rating. When Plaintiff Grant questioned why he was receiving a rating and being denied the opportunity for overtime, he was told that it was because (1) other officers told Defendant Garlitz that Plaintiff Grant was not speaking about them in a nice way; (2) Plaintiff Grant continued to wear sneakers; and (3) other officers were mad at Plaintiff Grant for filing complaints regarding discriminatory treatment.

11

(*Id.* ¶ 158.b.)  With respect to Warrenfeltz, the entirety of Plaintiffs' allegations are as follows:

> On or about July 13 and 15 of 2022, Plaintiff Guy was passing through the metal detector at the entrance to the MCTC compound when Officer Billie Wheeler . . . told something which she could not hear to Lieutenant Dwayne Draper . . . on July 13 and to Lieutenant Thomas Warrenfeltz  . . . .  Plaintiff Guy was then stopped by the respective Lieutenants on the respective dates and told to empty her water bottle or return it to her car because such material was not allowed in the compound.

(*Id.* ¶ 184.c.)  As to Myers, the allegations are:

> After filing his Charge of Discrimination on or about September 8, 2022, on or about January 27, 2023, Plaintiff Bangura was called at approximately 11:48 PM by his Lieutenant Terry Myers . . . asking if he would be arriving at work for the 12:00 AM to 8:00 AM shift. Plaintiff Bangura told Lt. Myers that he would be arriving at work, but likely late by 15 to 30 minutes. Plaintiff Bangura arrived at MCTC for his shift at 12:25 AM. Plaintiff Bangura received a Level II reprimand for this delay, however, written policy is that a CO who is more than 30 minutes late will be considered "grossly late."

(*Id.* ¶ 177.a.)  With respect to Lohman, Plaintiffs allegations are that:

> In or about October 2021, Plaintiff Grant filed a complaint of discrimination against Defendant Durboraw for the September 7, 2021 incident. In retaliation, shortly thereafter, Plaintiff Grant was charged with violating the Standards of Conduct and Performance. When discussing this disciplinary charge with Defendant Lohman, Plaintiff Grant was told that he was "lucky" to still have his job.
>
> . . .
>
> On or about March 3, 2023, Plaintiff Bangura was called to Defendant Lohman's office to discuss the January 27, 2023 incident.  Defendant Lohman informed Plaintiff Bangura that he has already received other reprimands and that should he receive more he could receive a suspension and termination. Plaintiff Bangura understood these statements to be a threat to his employment with DPSCS.  Plaintiff Bangura expressed his displeasure with this course of action and these statements and Defendant Lohman declared that he was being insubordinate.

(*Id.* ¶¶ 158.a., 177.b.)  With respect to Kretzer, the entirety of Plaintiffs' allegations are that, after Britto was yelled at by Durboraw, Kretzer "instructed Plaintiff Britto to leave which he did at that time" and that Plaintiff Bangura once reported unwarranted behavior by another officer to Kretzer. (*Id.* ¶¶ 168.a, 176.c.)  With respect to Little, Plaintiffs allege only that "[s]hortly after Plaintiff Guy began her employment with DPSCS in or about March 2021, Plaintiff Guy overheard Sergeant

12

Brent E. Little . . . state that people like her should not be receiving overtime opportunities." (*Id.* ¶ 184.a.)

Plaintiff cannot seriously contend that any of the foregoing allegations support an inference of malice or gross negligence on the part of these Defendants. Further, not only do the allegations not support any inference of malice or gross negligence, it is difficult for the Court to comprehend how any of these alleged actions amount to a violation of Article 24.

Furthermore, to the extent that Plaintiffs seek to rely on their vague allegations referencing all "40 West Defendants," they may not do so. "A plaintiff must point to *specific facts* that raise an inference that the official's actions were improperly motivated and the facts which make the act malicious must be alleged with some clarity and precision." *Francis*, 2023 WL 2456553, at *32 (citations and internal quotation marks omitted) (emphasis in original). Indeed, "defendants are not fungible; the Court must examine what each is charged with doing or failing to do." *Id.* (citations and internal quotation marks omitted).

The allegations against Defendant Durboraw are somewhat more concerning, given, for example, the allegation that he threw a chair at a Plaintiff. (*See* ECF No. 48 ¶ 156.a.) The Court makes no conclusion as to whether this evidences malice or gross negligence, as Defendants have not carried their burden, given that they do not discuss Defendant Durboraw in sufficient detail. However, more critically, it is not clear to the Court how Defendant Durboraw's actions amount to a violation of Article 24. Thus, Plaintiffs will be directed to show cause why the claims should not be dismissed against Durboraw, taking into account this Memorandum and Order.

### E.    Count VII – 42 U.S.C. § 1985(3)

Plaintiffs also brought Count VII, entitled "Conspiracy to Interfere with Civil Rights in Violation of 42 U.S.C. § 1985(3)" against the 40 West Defendants. Defendants argue that Plaintiffs fail to state a claim. The Court agrees, and the claim will be dismissed.

13

42 U.S.C. § 1985(3) provides that:

> If two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

"The law is well settled that to establish a sufficient cause of action for 'conspiracy to deny equal protection of the laws' under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Further, "[t]o survive a motion to dismiss, plaintiffs alleging conspiracy under Section 1985(3) must 'plead specific facts in a nonconclusory fashion.'" *Davenport v. Maryland*, 38 F. Supp. 3d 679, 692 (D. Md. 2014) (quoting *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 970 (4th Cir. 1992)). "It is not enough for a plaintiff to plead 'allegations of parallel conduct' by individuals because the plaintiff 'must show an agreement or a meeting of the minds by defendants to violate the [plaintiff's] constitutional rights.'" *La Union del Pueblo Entero v. Ross*, 353 F. Supp. 3d 381, 397 (D. Md. 2018) (quoting *Simmons*, 47 F.3d at 1376).

There are no non-conclusory allegations that the Remaining 40 West Defendants—or indeed any Defendants—had an agreement or meeting of the minds, and nothing in the Amended Complaint leads to a plausible inference that there was a conspiracy or concerted action by the Remaining 40 West Defendants.

Furthermore, the crux of Plaintiffs' claims is employment discrimination and retaliation. Thus, their § 1985(3) claim is foreclosed by *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366 (1979). There, the Supreme Court held that "deprivation of a right

created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378; *see also Davenport*, 38 F. Supp. 3d at 692 (explaining that where "the essence" of a claim is employment discrimination, *Novotny* forecloses a § 1985(3) claim).[5]

Thus, this claim fails and must be dismissed.

**F.      Counts VIII and IX – Racketeering Influenced Corrupt Organizations Act**

Plaintiffs bring Count VIII, which asserts a RICO claim against the 40 West Defendants, and Count IX, which asserts a RICO conspiracy claim against the 40 West Defendants.  These claims will be dismissed.

Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or associated with any enterprise" in interstate or foreign commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" "Racketeering activity is defined under 18 U.S.C. § 1961(1), as 'any act which is indictable' under a number of enumerated criminal provisions[.]" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 592 (D. Md. 2014).  This includes "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year" and "any act which is indictable" under several provisions of title 18 of the United States Code, including 18 U.S.C. § 1512, relating to tempering with a witness, victim, or informant, and 18 U.S.C. § 1343, relating to wire fraud.  18 U.S.C. § 1961(1).

"To state a civil RICO claim, a plaintiff must plausibly allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *AMA Sys., LLC v. 3B Tech, Inc.*, Civ

---

[5] Although Plaintiffs state—without elaboration—that their claims "are not improperly predicated on Title VII violations alone but are grounded in broader constitutional and statutory violations" (ECF No. 71 at 58), they also appear to concede, if unintentionally, that employment-related discrimination and retaliation are the core of the case. (*See* ECF No. 71 at 10 ("The Plaintiffs have brought this case based on systemic race discrimination, hostile work environment, and disparate discipline under Title VII and Maryland law.").)

No. DLB-21-1472, 2022 WL 2133905, at *3 (D. Md. June 14, 2022) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). In addition, "to plead a pattern of racketeering activity, a plaintiff must allege (1) a minimum of two acts of racketeering activity occurring within ten years, (2) which are related, and (3) which amount to or pose a threat of continued criminal activity." *Sol v. M&T Bank*, 713 F. Supp. 3d 89, 101 (D. Md. 2024) (citation and internal quotations omitted). And, "to establish the existence of racketeering activity, [a plaintiff] must adequately plead the elements of [the] predicate acts." *Kimberlin v. Hunton & Williams LLP*, Civ. No. GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mar. 29, 2016), *aff'd*, 671 F. App'x 127 (4th Cir. 2016). The Court is mindful that "[a]ttention to the nature of the underlying offenses is necessary because the heightened civil and criminal penalties of RICO are reserved for schemes whose scope and persistence set them above the routine." *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074 (4th Cir. 1987).

Plaintiffs base their RICO claims on eight predicate acts. Plaintiffs do not sufficiently allege any of the predicate acts. The Court takes each in turn.

### 1.    State Law Predicates

Plaintiffs allege five predicate acts based upon state law:

a. Delivering contraband to a person detained and/or confined in MCTC in violation of Md. Code Ann., Crim. Law § 9-412(a)(1);

b. Possessing contraband with intent to deliver it to a person detained and/or confined in MCTC in violation of Md. Code Ann., Crim. Law § 9-412(a)(2);

c. Knowingly possessing contraband in MCTC in violation of Md. Code Ann., Crim. Law § 9-412(a)(3);

d. Delivering a controlled dangerous substance to a person detained or confined in MCTC in violation of Md. Code Ann., Crim. Law § 9-416(a)(1); [and]

e. Possessing a controlled dangerous substance with the intent to deliver it to a person detained and/or confined in MCTC in violation of Md. Code Ann., Crim. Law § 9-416(a)(2)[.]

(ECF No. 48 ¶ 150.)

16

Plaintiffs fail to sufficiently allege the predicate acts.[6] The *entirety* of Plaintiffs' allegations that the Court has identified that relate to alleged contraband and controlled substances are as follows:

> Further, the 40 West Defendants have been known to smuggle contraband (i.e., tobacco) into MCTC for both personal use and sale to inmates . . . .

> Caucasian officers, including the 40 West Defendants and other members of '40 West', have also been observed bringing contraband, such as food and tobacco, into the workplace . . . .

> The 40 West Defendants further entangle the enterprise in interstate commerce through its continuing pattern of racketeering activity, including, but not limited to, the distribution of contraband, such as tobacco and controlled substances, throughout the MCTC compound which was gained through the stream of interstate commerce . . . .

> The 40 West Defendants agreed to and did conduct and participate in the conduct of the DPSCS and MCTC Enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of smuggling and/or selling contraband in MCTC, retaliating against Plaintiffs and RICO Plaintiffs for their participation in a protected activity, and intentionally defrauding Plaintiffs and RICO Plaintiffs, including, *inter alia*: . . . smuggling contraband, including tobacco, into MCTC and/or selling contraband, including tobacco, in MCTC[.]

(ECF No. 48 ¶¶ 50, 74.b, 149, 297.) This falls far short of the requirement that a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" in order to survive a motion to dismiss. *Id.* at 545. Plaintiffs' allegations do not even amount to a

---

[6] With respect to the first three state crimes relating to contraband, Defendants also argue that these do not fall within the types of offenses enumerated in 18 U.S.C. § 1961(1). As noted above, the enumerated offenses include "any act . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Defendants argue that because the Maryland laws relate to contraband—as opposed to a controlled substance or listed chemical—these crimes cannot be predicate acts. Plaintiffs argue that "contraband," as that term is defined under Maryland law, includes "controlled dangerous substances." (ECF No. 71 at 52–53 (citing Md. Code Ann., Crim. Law § 9-410(c)).) The Court is inclined to agree with the Defendants—particularly where, as here, Plaintiffs allege that the alleged contraband includes tobacco and food, which are plainly not controlled dangerous substances. However, neither party has cited authority for their proposition, and the Court need not reach the issue to dismiss the state-law-predicate RICO claims.

formulaic recitation of the elements.  And, there are quite literally no factual details at all about the alleged smuggling of controlled dangerous substances.  Here, in short, Plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 547.

Accordingly, the RICO claims fails as to these purported predicate acts.

### 2.   18 U.S.C. § 1512

Plaintiffs allege two predicate acts pursuant to 18 U.S.C. § 1512:

> f. Knowingly using and/or attempting to use intimidation, threats, corrupt persuasion, and/or misleading conduct with the intent to influence, delay, and/or prevent the testimony of Plaintiffs and others in official proceedings in violation of 18 U.S.C. § 1512(b)(1); [and]

> g. Intentionally harassing Plaintiffs and thereby hindering, delaying, preventing, and/or dissuading Plaintiffs from attending and/or testifying in an official proceeding in violation of 18 U.S.C. § 1512(d)(1)[.]

(ECF No. 48 ¶ 150.)

18 U.S.C. § 1512(b)(1) prohibits using intimidation or threats with the intent to "influence, delay, or prevent the testimony of any person in an official proceeding," and 18 U.S.C. § 1512(d)(1) prohibits "intentionally harass[ing] another person and thereby hinder[ing], delay[ing], prevent[ing], or dissuad[ing] any person from," *inter alia*, "attending or testifying in an official proceeding."  Defendants argue that the allegations in the Amended Complaint do not raise an inference of a violation of these provisions.  The Court agrees.

Once again, Plaintiffs fall short of stating a claim.  Plaintiffs point to the following allegations in support of their argument that they have sufficiently stated a claim:

> After filing his Charge of Discrimination on or about September 8, 2022, on or about January 27, 2023, Plaintiff Bangura was called at approximately 11:48 PM by his Lieutenant Terry Myers . . . asking if he would be arriving at work for the 12:00 AM to 8:00 AM shift.  Plaintiff Bangura told Lt. Myers that he would be arriving at work, but likely late by 15 to 30 minutes.  Plaintiff Bangura arrived at MCTC for his shift at 12:25 AM. Plaintiff Bangura received a Level II reprimand for this delay, however, written policy is that a CO who is more than 30 minutes late will be considered "grossly late" . . . .

18

> After filing her Charge of Discrimination on or about September 8, 2022, on or about September 27, 2022, an investigation was opened pursuant to a materially false report that Plaintiff Guy was delivering contraband to inmates at the facility . . . .

> After filing her Charge of Discrimination on or about September 8, 2022, in or about October 2022, Plaintiff Lovelace was approached by Officer Bradley Deshong . . . and Officer Scott Blankley . . . in or near HU #5. Ofcs. Deshong and Blankley told Plaintiff Lovelace that she was causing trouble and Plaintiff Lovelace told them that she was not and disengaged from the encounter.

(ECF No. 48 ¶¶ 177.a., 185.a., 195.a.)  This is insufficient.  Even assuming that an EEOC proceeding is an official proceeding, the Court cannot find it plausible, based upon these allegations, that there has been a violation of 18 U.S.C. § 1512(b)(1) or (d)(2).  There are no allegations relating to intent, and there are no allegations at all regarding attending an official proceeding, or the provision of testimony at an official proceeding.  In short, nothing in Plaintiffs' allegations suggest that they were prevented or dissuaded from attending an EEOC hearing or testifying before the EEOC.

Furthermore, a "pattern of racketeering activity" requires "at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  And, "[w]hile a minimum of two predicate acts is required, two acts alone do not necessarily establish a pattern."  *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 549 (4th Cir. 2001) (citing *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14 (1985).)  Nothing in the above-quoted passages raises the inference of a "pattern" of activity.  *See id.* ("To establish a pattern of racketeering activity, the plaintiff must show that the predicate acts are related and that they amount to or pose a threat of continued criminal activity." (citation and internal quotation marks omitted).)

In addition, "[w]hile there is no bright-line rule as to the amount of time the fraudulent activity must last to warrant a RICO violation, this Court and the Fourth Circuit have suggested that a period of two years is insufficient."  *Sol*, 713 F. Supp. 3d at 103 (citing *Parker*, 247 F.3d at 550; *United States v. Pinson*, 860 F.3d 152, 163 (4th Cir. 2017)).  Here, the only dates the Court

is provided with in the Amended Complaint with respect to these allegations are the dates quoted above. These actions all took place within about a five-month period. The Court recognizes that Plaintiffs vaguely allege that "[t]he 40 West Defendants have conducted the business of the DPSCS and MCTC Enterprises through a continuing pattern of racketeering activity over the last ten (10) years with the last act occurring within the last four (4) years," (ECF No. 48 ¶ 150), but they provide no factual allegations in support of this contention.

### 3.   18 U.S.C. § 1343

Plaintiffs also allege a final predicate act: "Perpetuating a wire fraud against Plaintiffs . . . by forwarding materially false communications to Plaintiffs . . . that they were not eligible for overtime shifts because it was not their turn according to an alleged 'seniority list' and thereby denying Plaintiffs . . . overtime compensation which they would have received in violation of 18 U.S.C. § 1343." (ECF No. 48 ¶ 150.)

18 U.S.C. § 1343 provides for criminal liability for "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice[.]"

When a civil RICO claim is based upon this statute, it must be pled with particularity. *See Chambers*, 43 F. Supp. 3d at 593 ("[W]hen mail and wire fraud are asserted as predicate acts in a civil RICO claim, each must be pled with particularity required by Rule 9(b)."). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Thus, while a plaintiff may make "conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive," a plaintiff must

plead with particularity "the time, place, and contents of the false representations, as well as the identify of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Further, "[t]he Fourth Circuit has expressed reservations about RICO claims where the predicate acts are mail and wire fraud 'because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice.'" *Grant v. Shapiro & Burson, LLP*, 871 F. Supp. 2d 462, 474 (D. Md. 2012) (quoting *Parker*, 247 F.3d at 549).

Plaintiffs do not allege the time or place of the allegedly false representations. The only reference to time is Plaintiffs' vague and unsupported allegation that "[t]he 40 West Defendants have conducted the business of the DPSCS and MCTC Enterprises through a continuing pattern of racketeering activity over the last ten (10) years with the last act occurring within the last four (4) years." (ECF No. 48 ¶ 150.) But this is insufficient, particularly in light of Plaintiffs' failure to detail one single instance of such false representation. Plaintiffs also vaguely assert that these representations occurred "through and/or involving wires." (*See id.* ¶ 60 ("The 40 West Defendants would fraudulently communicate to Plaintiffs and other similarly situated individuals through and/or involving wires").) This simply does not reflect pleading that identifies the time or place of the false representations with particularity. *See Grant*, 871 F. Supp. 2d at 474 ("[T]he vague reference to Defendants' use of mail or wire systems does not provide any factual description of how they employed mailings or wirings to execute the purportedly fraudulent scheme.").

Furthermore, Plaintiffs do not allege who made the false representations, referring only generally—as they do with most allegations in their Amended Complaint—to the "40 West Defendants." (*See, e.g.*, ECF No. 48 ¶ 304.a. ("[T]he 40 West Defendants routinely exercised this control by ignoring the 'seniority list' and calling or instructing 'Duty COLs' to call members of

21

'40 West' or those supportive of '40 West'"); *id.* ¶ 51 ("The 40 West Defendants, including those previously identified as 'John Doe,' include those individuals who worked as Desk Correctional Officer Lieutenants during the relevant period of this lawsuit, called COs for overtime opportunities via additional shifts, and ignored the 'seniority list' provided to equitably organize the process for selecting COs for overtime opportunities and which COs, such as Plaintiffs and other similarly situated individuals, relied upon."); *id.* ¶ 59 ("The 40 West Defendants have further conspired amongst themselves and others . . . by wholly ignoring the use of, refusing to use, and/or otherwise failing to use a 'seniority list.'").) This is insufficient. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud."); *Kimberlin v. Hunton & Williams LLP*, Civ. No. GJH-15-723, 2016 WL 1270982, at *7 (D. Md. Mar. 29, 2016), *aff'd*, 671 F. App'x 127 (4th Cir. 2016) (dismissing claims where "multiple defendants are involved, but the complaint does not clearly identify which Defendant played which role" (citation omitted)); *Davis v. Wilmington Fin., Inc.*, Civ. No. PJM 09-1505, 2010 WL 1375363, at *3 (D. Md. Mar. 26, 2010) ("The Rule 9(b) problem is exacerbated in this case where multiple Defendants are involved and the pleading alleges some type of fraudulent scheme without clearly identifying which Defendant played which role."); *Wang Labs., Inc. v. Burts*, 612 F. Supp. 441, 445 (D. Md. 1984) (dismissing certain defendants where, "[o]ther than the defendants' respective positions with the corporations, . . . there is no allegation of their individual participation in the alleged fraud," and where plaintiff "groups all twelve defendants together . . . in three conclusory paragraphs").

Because Plaintiffs have not sufficiently alleged any of the eight predicate acts they include in their Amended Complaint, Plaintiffs' RICO claim and conspiracy to violate RICO claim will be dismissed.

22

### G.    Plaintiff Brown

Defendants argue that Plaintiff Brown should be dismissed because she fails to state a claim for discrimination or retaliation. The Court agrees that she fails to state a claim for discrimination and retaliation. However, Defendants do not appear to have moved for dismissal of any other theories of discrimination, such as hostile work environment.

A claim of discrimination under Title VII requires a plaintiff to demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Brown alleges no adverse employment action. She alleges, for instance, that she has "both witnessed and experienced unequal treatment of black officers compared to my [sic] white colleagues. Black officers are more severely punished and are subjected to searches at a much higher rate than white officers. White officers who engage in misconduct are not disciplined, whereas black officers are targeted for unwarranted discipline or for minor infractions." (ECF No. 48 ¶ 200.) But she does not make a single allegation that she herself was subjected to an adverse employment action, and makes only vague and unsupported statements such as the foregoing quote. Her discrimination claim fails.

With respect to a Title VII retaliation claim, a plaintiff is required to allege that: "(1) she engaged in a protected activity; (2) an adverse action was taken against her by the Defendant; and (3) there was a causal connection between the first two elements." *Forgus v. Mattis*, 753 F. App'x 150, 154 (4th Cir. 2018). Once again, Brown alleges no adverse action. Her retaliation claim fails as well.

However, Defendants did not move to dismiss a hostile work environment claim. Thus, only a hostile work environment claim survives as to Plaintiff Brown.

### H.    Class Action

Finally, Defendants argue that the Court should strike the class claims. "[S]everal circuits, including the Fourth Circuit in an unpublished table decision, have found that Rule 23 permits defendants to file preemptive motions to deny certification before discovery is completed." *Williams v. Potomac Fam. Dining Grp. Operating Co., LLC*, Civ. No. GJH-19-1780, 2019 WL 5309628, at \*4 (D. Md. Oct. 21, 2019) (collecting cases). "Courts have also coalesced around a broad understanding of when granting such motions is proper, holding that class allegations should generally be struck before the completion of discovery only when it is apparent from the face of the complaint that the requirements for maintaining a class action cannot be met." *Id.* at \*5 (internal quotation marks omitted) (collecting cases). And while the plaintiff ultimately bears the burden of demonstrating that class certification requirements are met in due course, "when a defendant files a pre-discovery challenge to class certification on the basis of the allegations in the complaint only, the standard of review is the same as a motion to dismiss for failure to state a claim." *Id.* (internal quotation marks and citation omitted). In short, the Court is mindful that "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981).

Plaintiffs allege the existence of a "Civil Rights Class" that includes several subclasses:

Promotion Sub-Class: All current and former individual black COs and immigrant COs at MCTC, who were subject to promotion policies and/or denied promotions and/or did not receive the opportunity to apply for promotions by DPSCS from three (3) years from the filing of this Complaint through the present;

Arms Card Sub-Class: All current and former individual black COs and immigrant COs at MCTC who were denied an arms card and/or did not receive the opportunity to apply for an arms card from three (3) years from the filing of this Complaint through the present;

Overtime Sub-Class: All current and former individual black COs and immigrant COs at MCTC who were denied overtime opportunities in the form of additional shifts and/or were not selected to take overtime opportunities in the form of

24

additional shifts from three (3) years from the filing of this Complaint through the present;

Discipline Sub-Class: All current and former individual black COs and immigrant COs at MCTC, who were disciplined in excess of written policies and procedures and/or in contravention of written policies and procedures (including charges, investigations, suspensions, demotions, and/or terminations) from three (3) years from the filing of this Complaint through the present; [and]

Hostile Work Environment Sub-Class (Discrimination and Retaliation): All current and former individual black COs and immigrant COs at MCTC.

(ECF No. 48 ¶ 205.) Plaintiffs also allege a RICO class. (*Id.* ¶ 210.)

The Court has already dismissed the allegations relating to promotions and arms cards, as well as the allegations relating to RICO. Thus, the class claims based upon those allegations are dismissed.

However, with respect to the remaining subclasses, the Court cannot conclude at this juncture that "the requirements for maintaining a class action *cannot* be met." *See Williams*, 2019 WL 5309628, at *4 (emphasis added) (collecting cases). Even so, the Court has serious misgivings about the propriety of class certification in this case (should Plaintiffs indeed seek class certification), given the many weaknesses pointed out by the Defendants in their briefing and the relevant case law. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

## IV. *Conclusion*

As detailed above, as presented, the Amended Complaint largely fails to comply with the federal pleading standards. Now, with the case currently pared down from eight claims against twenty-five Defendants to essentially three claims against DPSCS, the Court will set additional dates and deadlines for further proceedings in this matter.

In particular, the Court will set in a deadline by which Plaintiffs must file a motion for leave to file a second amended complaint. To the extent Plaintiffs wish to file such a motion, the Court will not permit any second amended complaint that seeks to assert any factually unsupported claims or that is of the same scattershot nature as the Amended Complaint currently before the Court.

The Court concludes by noting that not only do most of the claims as pleaded fall far below the federal pleading standard, there are claims that are so woefully insufficient that they raise ethical and professionalism concerns. The most egregious examples are the bringing of claims against various individuals without lodging a single factual claim against them, and the bringing of a RICO claim—a heavy charge—without factual support. Plaintiffs' counsel are reminded of their professional obligations under Rule 11, which provide, *inter alia*, that that "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law [and] the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Plaintiffs' counsel are forewarned that any similarly grossly deficient filings may be the subject of a referral to the Court's Disciplinary and Admissions Committee.

DATED this ⁊ day of February, 2025.

BY THE COURT:

_James K. Bredar_

James K. Bredar
United States District Judge

27