IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALPHEUS BANGURA, et al.,                    *

    Plaintiffs,                              *

    v.                                       *            CIVIL NO. JKB-23-2728

DEPARTMENT OF PUBLIC SAFETY          *
AND CORRECTIONAL SERVICES, et
al.,                                         *

    Defendants.                              *

     *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Motion for Leave to File Second Amended Complaint. (ECF No. 90.[1]) For the reasons that follow, the Motion will be granted.

### I.    Background

As the Court previously explained, this case is based upon the following facts:

> Plaintiffs are all employees of [the Department of Public Safety and Correctional Services ("DPSCS")], working at the Maryland Correctional Training Center ("MCTC"), a prison facility. (ECF No. 48 ¶ 33.)  The 40 West Defendants are "agents, servants and/or employees of DPSCS and work at MCTC." (*Id.* ¶ 13.) Plaintiffs allege that "a group of Caucasian [correctional officers] organized to engage in illegal behavior and to take administrative control of MCTC, creating a race-based gang called '40 West', '40 West Boys', and/or '40 West Gang' decades prior to the present." (*Id.* ¶ 47.)  In short, Plaintiffs allege that they have been subjected to various forms of retaliation and discrimination at the hands of 40 West and DPSCS.

(ECF No. 79 at 2.)

This case was removed to this Court in October 2023. (ECF Nos. 1, 2.)  The parties sought and received several extensions of time with respect to answering the Complaint. (*See, e.g.*, ECF

---

[1] Plaintiffs filed a sealed unredacted version of the Motion and exhibits (ECF No. 81), and an unsealed, redacted version of the Motion and exhibits (ECF No. 90).  The Court cites to the unsealed, redacted version in this Memorandum.

Nos. 37–44.) On March 15, 2024, Plaintiffs filed an Amended Complaint. (ECF No. 48.) The parties again sought and received numerous extensions. (*See, e.g.*, ECF Nos. 61, 63–65.) In June and August 2024, Defendants filed Motions to Dismiss (ECF Nos. 62, 68), which—because of yet more extensions of time—became ripe for resolution in November 2024.

The Court issued a Memorandum and Order in February 2025, largely granting the Motion to Dismiss. (ECF Nos. 79, 80.) Further, the Court concluded that, despite bringing eight claims against 25 Defendants, "Plaintiffs' Amended Complaint largely does not comply with the federal pleading standards. Plaintiffs make sweeping allegations, usually without providing any factual support for those allegations. . . . [T]he Court will dismiss most of the claims in the Amended Complaint[.]" (*Id.* at 4.) The Court dismissed nearly all claims against the individual defendants, leaving claims against only one individual defendant and DPSCS. (*See generally id.*) The Court directed, *inter alia*, the filing of a motion for leave to file a second amended complaint. (ECF No. 80.)

Plaintiffs have filed a Motion for Leave to File Second Amended Complaint. (ECF No. 90.) As Plaintiffs explain, "[i]n light of the Court's directives, this Second Amended Complaint contains only claims against DPSCS. The Second Amended Complaint also seeks to clarify and provide additional factual support for (prior) Counts II, III, and IV against DPSCS only. As part of this, the Plaintiffs respectfully request leave to supplement their claims of discriminatory pattern and practice concerning promotions and a failure to provide arms cards, which were dismissed without prejudice." (ECF No. 90 at 2.) Defendant DPSCS opposes.

## II. *Legal Standard*

Federal Rule of Civil Procedure 15(a)(2) provides—as relevant here—that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Further, "'[a]lthough such motions should be

2

granted liberally, a district court may deny leave if amending the complaint would be futile—for example, if the proposed amended complaint fails to satisfy the requirements of the federal rules,' including Rule 12(b)(6)." *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 113 (4th Cir. 2025) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.    *Analysis*

Plaintiffs' proposed Second Amended Complaint includes three claims against DPSCS premised on discrimination and retaliation in violation of Title VII, the Maryland Fair Employment Practices Act, and Article 24 of the Maryland Declaration of Rights. (*See generally* ECF No. 90-1.) DPSCS argues that the amendments pertaining to failure to promote and issue arms cards are insufficient. (ECF No. 87.)

With respect to the allegations relating to discriminatory failure to promote, the Court concludes that the proposed Second Amended Complaint pleads sufficient facts—if only barely—

3

to avoid denial of the Motion to Amend. DPSCS argues only that Plaintiffs did not allege that they applied for a vacancy. However, Plaintiff Brown alleges:

> At the beginning of her employment, another black female officer was promoted to the rank of Seargent [sic]. This officer was terminated, and the reason given to Officer Brown was that she engaged in misconduct. When she was terminated, Officer Brown was told by the Warden at that time there would be no more promotions of black officers – they had "tried that, and it did not work out." This was a direct reference to promoting black officers. The Warden also told her that she would never be promoted and that he would block her from being promoted. Officer Brown was told this when she expressed her interest in moving up through the ranks.

(ECF No. 90-1 ¶ 183.) This, combined with other allegations that permit an inference of discrimination, (*see, e.g.*, *id.* ¶ 50 ("Lohman called a white employee with a black wife a '[racial epithet] lover' in a conversation where the employee asked why he had not been promoted.")), is sufficient. *Cf. Miall v. City of Asheville*, Civ. No. 23-00259-MR-WCM, 2024 WL 171950, at *5 (W.D.N.C. Jan. 16, 2024) ("Here, the Plaintiffs have presented no evidence of additional applicants who are claiming that they were deterred from applying, nor have they shown the Defendants had such a reputation for discrimination that would have created a significant deterrent effect." (emphasis omitted)).

With respect to the allegations relating to discriminatory failure to provide arms cards, the Court likewise finds that Plaintiffs have alleged enough to avoid denial of their Motion to Amend. Plaintiff Guy alleges that "several lieutenants . . . informed her that weapons cards were issued based on seniority" but that "white officers with less seniority than her, such as Officer P. Moore and Officer Z. Crow, received weapons cards prior to her." (ECF No. 90-1 ¶ 174.) Plaintiff Grant alleges that he "spoke with multiple other black officers, including Officer Guy and Officer Bangura" and that, "[r]egardless of seniority, none of the other black officers he spoke with had weapons cards" but that "at least two white officers with less seniority than Officer Grant, Officer

4

Case 1:23-cv-02728-JKB    Document 91    Filed 04/17/25    Page 5 of 5

Moore, and Officer Crown possessed weapons cards." (*Id.* ¶¶ 87–88.) Further, Plaintiff Lovelace alleges that:

> While Officer Lovelace did not request weapons training, she did not do so because she believed it was futile. . . . Colleagues openly stated that people of color were unfit to hold weapons cards, a sentiment that persisted throughout Officer Lovelace's employment. This hostile environment ultimately deterred Officer Lovelace from pursuing a weapons card.

(*Id.* ¶ 143.) Plaintiff Britto alleges that his "repeated requests for job assignments and weapons training were ignored or met with adverse actions." (*Id.* ¶ 36; *id.* ¶ 105 (Plaintiff Britto also alleging that he "repeatedly informed his supervisor . . . of his desire to become weapons-qualified and requested placement on the Weapons Testing Range through an Information Report form" but that "these requests were systematically ignored, effectively denying him the benefits that come with being weapons-qualified").) While some of these allegations on their own might not raise a plausible inference of discrimination, together they do.

Accordingly, the Court concludes that the amendments are not futile, and that the Motion to Amend should be granted.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF Nos. 81, 90) is GRANTED.

DATED this 16 day of April, 2025.

BY THE COURT:

James K. Bredar
United States District Judge